PER CURIAM.
—Affirmed, on opinion of the special term, with costs.
The opinion of Mr: Justice RUSSELL at special term is as follows :
The commissioners assessed the relator for the year 1894 for the sum of $9,776,934. A warrant is out for the collection of the taxes on this assessment to the amount of about $163,000. The relator procured a certiorari to review the assessment. A return was made, some evidence taken upon hearing at special term, and the inquiry presents these two questions for solution: First. Had *364 the tax commissioners the right to embrace the relator within their jurisdiction and assess the value of its capital? Second. If they had this right, was their assessment plainly and clearly excessive? In the view taken by this court, the solution of the first question renders inquiry into the second unnecessary.
The relator was created by special act of the legislature of this state, and organized in April, 1892. The by-laws provide that principal place of business shall be in the city of Schenectady, in the county of Schenectady and state of New York, but there should be an office or place of business in the city of New York and in such places the state of New York as the board of directors might determine. The tax commissioner for New York City assessed the stock of the company in the assessment upon which the taxes for 1893 were to be collected, the relator protesting against liability to taxation and the amount assessed, but finally remaining quiescent under an assessment in New York City of the same amount as the assessment to review which this certiorari was taken.' The commissioners, in making the assessment for 1894, have the undoubted right to consider the inquiries made by them in making the assessment for 1893, although it was their duty to still more further inquire, in view of the greatly changed conditions of the financial world from the spring of 1893 to the spring of 1894, and in view, also, of a possibility of a changed situation of the financial place of business or the place of operations of the company. For the year 1894, upon the assessment made between the first Monday of September, 1893, and the second Monday in January, 1894, the tax commissioners assessed the personal property of the relator in the sutn of $50,000,000. The relator appeared and contested the legality of such assessment upon the grounds referred to, viz. want of jurisdiction to assess at all in New York county, and secondly, excessive valuation, and furnished some proof which is substantially uncontradicted, except it may be by the knowledge or information acquired by the tax commissioners in the proceedings for the assessment of 1893, and this possible contradiction applies to the issue of excessive valuation mainly. By the affidavit of Yice President Ord, of the Electric Company, it appears that the principal place of business at Schenectady, as provided by the by-laws, has never been officially changed by action of the directors, except that, prior, to the 1st of October, 1893, the general, executive, and financially business theretofore being done at New York City was transferred to Boston, the accounting department being transferred in June, 1892 and the treasurer’s and secretary’s departments for a few months1 later, and that all the securities, including the stocks and bonds of' the company, were, before the first part of November, 1893, taken to the city of Boston and there put in the custody of the vice-president, Ord. The meeting of the board of directors was held in Boston, and none of the principal officers of the company, after October 1st were resident in the state of New York. The manufacturing business of the company was carried on in Schenectady, and the branch office, formerly in New York, was removéd to Schenectady, leaving in the city of New York only a selling agent *365 doing business under the designation of the Eastern District.” "The stockholders’ meetings have always been held in Schenetady.
Upon these facts the question of law arises as to which of the two counties of the state of New York the right of the assessment of the personal property of the company should be given. The state of New York does not seek to impose a double taxation upon the same property, nor does it deprive one county of the state of the means to be afforded by taxation of the assessable property within that county because another important financial center may have, at an earlier date in the year, made an assessment upon the personal property rightfully assessable in the former county. The general provisions of the Revised Statutes conform to this theory: “All of the personal estate of any incorporated company liable to taxation on its capital shall be assessed m the town or ward where the principal office or place for transacting the financial concerns of the company shall be, or if such company have no principal office or place for transacting its financial concerns, then in the town or ward where the operations of such company shall be carried on.” 1 Rev. St. p. 389, § 6. Assuming that the general financial operations of the company may be now carried on in the city of Boston,- still the principal office or place of business, and the place where the principal financial transactions of the company are carried on, is in county of Schenectady; and this view is further confirmed by the general corporation acts (Laws 1892, c. 687, § 3); which provides: “The term, ‘office of a corporation,’ means its principal office within the state, or principal place of business within the state, if it has no principal office therein. The office of a stock corporation shall be in the county, town, or state in which its business is principally carried on.” It seems clear to me that the taxing authorities of the county of Schenectady have the right of assess the value of the personsal property of the relaror, and that those of the county of New York have not.
. The assessment, therefore, made by the commissioners of New York county should be vacated.